El Pueblo de Puerto Rico, demandante y apelado, *v.* South Porto Rico Sugar Co., acusada y apelante.

No. 3517.—*Sometido:* Noviembre 21, 1928. *Resuelto:* Junio 10, 1929.

*F. Manuel Toro* y *O. B. Frazer,* abogados de la apelante; *José E. Figueras,* abogado de *El Pueblo,* apelado.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

Mediante acusación se imputaba a la South Porto Rico Sugar Co. haber infringido la Ley No. 102 de 1925, ya que dicha corporación no había presentado a la Comisión de Indemnizaciones a Obreros dentro del tiempo concedido, un estado demostrativo del número de obreros que empleaba, la clase de ocupación de dichos obreros y la cantidad total de jornales pagádosles durante el año fiscal 1926–27.

La corte inferior halló que las alegaciones de la acusación habían sido probadas y procedió a considerar la defensa especial levantada por la acusada, a saber: que a virtud de un decreto *pro confesso* de la Corte de Distrito de los Estados Unidos para Puerto Rico, dictado en 1924, se impidió a la Comisión de Indemnizaciones a Obreros que requiriera informe alguno de dicha South Porto Rico Sugar Co. a virtud de la ley antes mencionada. El objeto del procedimiento de *injunction* instituido ante la Corte Federal fué que dicha Ley No. 102 de 1925 debía declararse nula e inconstitucional por varias razones.

La acusación en este caso fué instituida de conformidad con las disposiciones del artículo 13 de la ley en cuestión. El *injunction* obtenido de la Corte de Distrito de los Estados Unidos en marzo 28, 1924, fué para impedir, entre otras cosas, que la Comisión de Indemnizaciones a Obreros exigiera informes parecidos en aquel entonces y bajo un artículo 13 similar. Se admite prácticamente por todos que la ley que estamos considerando es solamente la continuación de la ley anterior contra la cual el *injunction* fué dirigido. En otras palabras, que la teoría y el fin de la ley son los mismos ahora que en 1924, y no puede sostenerse que haya diferencia alguna en cuanto al asunto envuelto.

Sin embargo, lo que la Corte de Distrito de Ponce resolvió fué que el personal de la Comisión de Indemnizaciones a Obreros había cambiado totalmente; que los miembros que constituyen la actual comisión son un cuerpo de hombres diferentes y fueron nombrados o elegidos de distinta manera. La teoría de la decisión evidentemente es que un *injunction* obtenido en 1924 no puede afectar a los actuales miembros de la comisión. Según hemos dicho, el decreto fué obtenido *pro confesso* y tanto la corte inferior como el fiscal de esta corte adoptan la posición de que un decreto obtenido de este modo no puede favorecer a la acusada.

La apelante insiste en que un decreto *pro confesso* puede utilizarse al igual que un decreto dictado sobre los méritos. En lo que se refiere al cambio habido entre los miembros de la comisión, la apelante sostiene, citando por escrito muchas autoridades, que como entonces se dictó un *injunction* contra la Comisión de Indemnizaciones a Obreros como un cuerpo, la restricción debe continuar en vigor contra los actuales miembros de dicha Comisión de Indemnizaciones a Obreros. Si éste fuera en realidad un pleito civil en que la Comisión de Indemnizaciones a Obreros compareciera ante la corte alegando que tenía el derecho a entablar el procedimiento, quizá dudaríamos, al igual que la apelante, que sus sucesores tuvieran derecho a hacer cualquiera de las cosas que la Comisión de Indemnizaciones a Obreros anterior fué ordenada mediante *injunction* que se abstuviera de ejecutar. Empero, éste no es un pleito civil, sino que es una acusación entablada por El Pueblo de Puerto Rico, según se alega, por haber dejado la acusada y apelante de cumplir ciertos deberes específicos impuéstosle por la ley de 1925.

La Corte de Distrito de Ponce tenía la idea de que el decreto *pro confesso* dictado en 1924 no podía afectar la acusación presentada en este caso. No estamos en manera alguna seguros de que la corte no estuviera en lo cierto al decir que el decreto *pro confesso* obtenido en 1924 no podía

afectar a personas contra las cuales no se dictó directamente el *injunction*. La corte no fué lo suficientemente lejos. Podía agregarse que la prueba a que ha de someterse el efecto del decreto *pro confesso* dependería de toda la situación creada, o sea, a una prueba pragmática.

Sin embargo, la soberanía o *quasi* soberanía de El Pueblo de Puerto Rico no podría ser en forma alguna restringida por el decreto *pro confesso* de la Corte de Distrito de los Estados Unidos para Puerto Rico, especialmente en vista de que El Pueblo de Puerto Rico no se mencionó en tal decreto. En realidad una de las defensas que se trataron de levantar en la Corte de Distrito de los Estados Unidos en otro caso fué que la Comisión de Indemnizaciones a Obreros era una rama de El Pueblo de Puerto Rico y que por tanto los procedimientos debieron haberse iniciado contra El Pueblo de Puerto Rico. Esta contención fué declarada sin lugar por la Corte de Distrito de los Estados Unidos, y en apelación la Corte de Circuito de Apelaciones para el Primer Circuito sostuvo la conclusión de la Corte Federal, o sea, que la Comisión de Indemnizaciones a Obreros no podía levantar tal defensa. *Camuñas* v. *N. Y. & P. R. S. S. Co.*, 260 Fed. 40. De suerte que está fuera de toda duda que El Pueblo de Puerto Rico no quedaba afectado u obligado por la decisión de la Corte Federal.

Generalmente no procede un *injunction* para impedir prosecuciones criminales. 32 C. J. 279, y no vemos cómo podría hacerse indirectamente.

■ De conformidad con el artículo 13 de la ley de 1925 los deberes de un patrono de obreros son positivos. Se le exige que rinda ciertos informes y que haga otras cosas que se expecifican en dicha ley. Los deberes así impuestos no dependen de actuación alguna por parte de la Comisión de Indemnizaciones a Obreros. El deber de rendir un informe está fijado por la ley y no por actuación alguna de la Comisión de Indemnizaciones a Obreros. Asumiendo la constitucio-

nalidad de la ley, según debemos hacerlo cuando ésta no es atacada directamente, la acusada, de conformidad con la sentencia de la corte inferior, era culpable por haber dejado de cumplir con dicho deber. Esta consideración es realmente decisiva del caso.

Ya hemos resuelto que surgió un deber sin que existiera condición precedente alguna, o sea, sin que hubiera necesidad por parte de la Comisión de Indemnizaciones a Obreros de exigir un informe. Los autos revelan que una acusación anterior contra la South Porto Rico Sugar Co. fué abandonada en la época en que se ventilaban los procedimientos ante la Corte de Distrito de los Estados Unidos. Sin embargo, supongamos que la actuación por parte de la Comisión de Indemnizaciones a Obreros sea una condición precedente y que un *injunction* debidamente obtenido sea un obstáculo para que El Pueblo de Puerto Rico presentara una acusación. Entonces es de concebirse que la apelante podría argüir que el *injunction* era obligatorio para los sucesores de los miembros de la Comisión de Indemnizaciones a Obreros que fueron restringidos en 1924. Por consiguiente, examinaremos la naturaleza de la supuesta inhibición.

El decreto *pro confesso* decía así:

"En las Corte de Distrito de los Estados Unidos para Puerto Rico.
"South Porto Rico Sugar Company,

Demandante,         --     Caso en Equidad
vs.                             No. 1115

"L. Santiago Carmona et al., como Presidente, y miembros de la Comisión de Indemnizaciones a Obreros, y José E. Benedicto y Ramón Aboy, Jr., como Tesorero de Puerto Rico, demandados.

"Decreto *pro confesso.*

"Apareciendo a la corte que la demanda en el caso arriba titulado fué radicada en esta corte el 13 de marzo de 1922, que un *subpoena* fué debidamente expedido y notificado a los aquí demandados; que en junio 30, 1922, se dictó una orden declarando sin

lugar la excepción previa a la demanda y concediendo a los demandados hasta el 31 de julio, 1922, para contestar; que dicho período fué posteriormente prorrogado hasta agosto 8, 1922; que ninguno de los aquí demandados jamás ha radicado contestación alguna y que una resolución en los términos solicitados en la demanda fué debidamente registrada en el libro de resoluciones en febrero 21, 1924, por la oficina del secretario de esta corte, y que desde la fecha en que se dictó la citada resolución ninguno de los demandados ha dado paso alguno y han transcurrido más de treinta días desde que se registró la resolución *pro professo,* por la presente

"SE ORDENA, RESUELVE Y DECRETA que los demandados que componen la Comisión de Indemnizaciones a Obreros 'sean perpetuamente impedidos y restringidos de exigir a la demandante que radique cualquiera de los estados o informes requeridos o exigidos de conformidad con los términos de la citada Ley de Indemnizaciones a Obreros de Puerto Rico, o de fijar cuota o prima alguna para ser pagada por la demandante a los fondos de dicha Comisión creados por la citada ley, y

"SE ORDENA Y DECRETA ADEMÁS que la fianza otorgada por la Fidelity and Deposit Company of Maryland, radicada en el presente caso por la demandante, sea, y por la presente es, cancelada.

"San Juan, Puerto Rico, marzo 28, 1924.

(fdo.) ARTHUR F. ODLIN,
*Juez de Distrito de los Estados Unidos.*"

A la Comisión de Indemnizaciones a Obreros de entonces y en aquella época se le ordenó que se abstuviera de hacer ciertas cosas. En ninguna parte de dicho decreto aparecía que la Comisión de Indemnizaciones a Obreros no tuviera facultad para exigir informes, sino que el único aviso en el caso era que por alguna razón que el decreto no revela, a la Comisión de Indemnizaciones a Obreros de entonces y los miembros que la constituían se les prohibió, mediante *injunction,* que exigieran informes, etc. Creemos que de una mera inspección es evidente, según resolvió la corte inferior, que tal decreto no podía ser obligatorio para ninguna otra futura Comisión de Indemnizaciones a Obreros.

La apelante sostiene que un decreto *pro confesso* es tan

eficaz como un decreto sobre los méritos. Sin embargo, la práctica es, y las autoridades así lo declaran, que un decreto *pro confesso* debe ser redactado tan cuidadosamente como un decreto sobre los méritos. *Thomson et als.* v. *Wooster,* 114 U. S. 104; *Central Railroad* v. *Central Trust Co.,* 133 U. S. 83, 91; *Knott* v. *Giles,* 27 App. D. C. 581, 592; *McArthur* v. *Hood Rubber Co.,* 221 Mass. 374; *Perkins* v. *Tyrer,* 24 App. D. C. 456; 21 C. J. 792 *et seq.;* 10 R.C.L. 539 y 540. El remedio particular y total que se trata de obtener debe mencionarse en el decreto.

Una resolución *pro confesso* admite solamente la veracidad de los hechos alegados en la demanda. *Thomson* v. *Wooster* y otras autoridades, *supra.* No admite conclusiones de derecho. Diremos nuevamente que el decreto nunca informó a la actual Comisión de Indemnizaciones a Obreros de la supuesta nulidad o inconstitucionalidad de la ley. Meramente era una restricción para los comisionados de entonces.

¿Era el litigio por sí solo suficiente aviso como una especie de *lis pendens?* Si se examina la demanda radicada ante la Corte de Distrito de los Estados Unidos se verá que en ella se alega un gran número de fundamentos para sostener la supuesta inconstitucionalidad o nulidad de la ley. Estamos convencidos, sin que se haga una cita especial de autoridades, de que un estatuto no puede ser declarado nulo o inconstitucional en esta forma, o sea, mediante un decreto *pro confesso* que no contiene ningún pronunciamiento de inconstitucionalidad o nulidad, o que no está acompañado por ninguna opinión que demuestra tal inconstitucionalidad o nulidad.

Además, ¿podría imaginarse por un momento que todos y cada uno de los fundamentos de inconstitucionalidad y nulidad debían prevalecer? Algunos de ellos, por lo menos, han sido definitivamente declarados sin lugar por la decisión en el caso de *Camuñas* v. *N. Y. & P. R. S. S. Co., supra.* Para que un decreto sea efectivo debe declarar el fundamento

en particular de la nulidad o inconstitucionalidad que posteriormente impediría que la Comisión de Indemnizaciones a Obreros actuara bajo el estatuto así declarado nulo e inconstitucional.

Creemos que el decreto de la Corte de Distrito de los Estados Unidos, de no ser enteramente nulo, era totalmente ineficaz, exceptuando quizá en tanto en cuanto obligaba exactamente a las mismas personas que estaban ante la corte.

Vamos más lejos y dudamos de la validez del decreto contra futuras actuaciones de la Comisión de entonces. El decreto carecía de tantas cosas que no obligaba ninguna futura actuación de la Comisión de Indemnizaciones a Obreros, especialmente después de haberse dictado la decisión en el caso de *Camuñas* v. *N. Y. & P. R. S. S. Co.*, *supra*.

La Corte de Distrito de los Estados Unidos libró un auto preliminar de *injunction* contra la Comisión de Indemnizaciones a Obreros y sus miembros y se prestó una fianza. El auto preliminar de *injunction* necesariamente se confundió en el decreto final *pro confesso* y según el decreto mismo demostraba, la fianza prestada fué cancelada. Por tanto, podría dudarse si el decreto, deficiente como era, era eficaz para algún fin.

Si se alegara que no debía prevalecer una acusación bajo un estatuto inconstitucional, es evidente que en el presente caso criminal no se levantó cuestión alguna de inconstitucionalidad. Por el contrario, la acusada se basó en el *injunction* anteriormente obtenido en la Corte de Distrito de los Estados Unidos para Puerto Rico. Creemos que una corte no estaría justificada en declarar una ley inconstitucional de este modo informal. Es justo decir que las consideraciones que hacemos en este párrafo no se hacen en respuesta a nada de lo sugerido por la apelante, sino que son obra de nosotros mismos.

La Ley de Indemnizaciones a Obreros fué revisada en el

caso de *Camuñas* v. *N. Y. & P. R. S. S. Co.*, *supra*, y si bien
quizá no fueron levantadas en dicho caso todas las cuestiones
alegadas ante la Corte Federal por la South Porto Rico Sugar
Co., sin embargo, algunas de las más importantes sí lo fueron
y el examen del estatuto no sugirió a la Corte de Circuito de
Apelaciones que en forma alguna fuera nulo o inconstitu-
cional. Aparentemente el caso fué todo lo contrario.

En tanto en cuanto el *injunction* radicado ante la Corte
de Distrito de los Estados Unidos pudiera considerarse como
un obstáculo a una acusación por parte de El Pueblo de
Puerto Rico, también deseamos manifestar que parece algo
dudoso que la Corte de Distrito de los Estados Unidos para
Puerto Rico tuviera jurisdicción para declarar dicho estatuto
nulo o inconstitucional. Ha sido resuelto con ciertas limi-
taciones que la Constitución de los Estados Unidos no es
aplicable a Puerto Rico hasta tanto que el Congreso de los
Estados Unidós lo determine claramente. Las actuaciones
que se proponía tomar la Comisión de Indemnizaciones a
Obreros en forma alguna atacaban directamente la validez
de la Ley Orgánica o de cualquiera otra ley de los Estados
Unidos. No toda inconstitucionalidad resultante daría juris-
dicción a una corte federal, sino que el conflicto con la Cons-
titución o con el estatuto debe ser directo. *Lovell* v. *Newman*,
227 U. S. 482; 25 C. J. 718.

Las cuestiones que hemos estado considerando fueron
levantadas en el tercer señalamiento de error de la apelante.

El primer señalamiento era que la corte cometió error al
dejar de declarar con lugar la moción solicitando un detalle de
particulares. En la acusación se decía que la acusada había
dejado de suministrar el informe antes del 15 de julio de 1927,
o dentro de la prórroga concedida por la Comisión de Indem-
nizaciones a Obreros.

La teoría de la apelante era que en la acusación se debía
decir quién solicitó la prórroga, si la corporación misma o
un agente de ella, a fin de levantar la defensa de prescripción.

Sin embargo, si de la acusación no se desprendía que la causa había prescrito, incumbía a la demandada alegar tal prescripción. Más bien parece que la acusación no había prescrito en manera alguna.

El segundo señalamiento de error es que la acusación era defectuosa, ya que no describía el sitio en que se cometieron las supuestas infracciones. Convenimos con El Pueblo que no importa dónde fueron cometidos los actos, o dónde fué que se dejó de cumplir con el estatuto, toda vez que la acusada es una corporación doméstica domiciliada en Ensenada, Puerto Rico, dentro de la jurisdicción de Ponce, que fué donde se instituyó el procedimiento.

*La sentencia debe ser confirmada.*